**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED IN CLERK'S
OFFICE

JUL 23  10 47 AM '01

U.S.

CHRISTA HEINRICHS,
          Plaintiff

v.

CONCORD FAMILY AND
YOUTH SERVICES, INC.,
CAROL LITZLER, and
ROSALYN MAMLAK,
          Defendants

C.A. No.

# 01-11321REK

## COMPLAINT

This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* for (1) failure to pay overtime compensation and (2) failure to make, keep, and preserve accurate records of wages, hours, and other conditions and practices of employment. Plaintiff worked over 110 hours a week as a houseparent in a residential facility for emotionally disturbed and/or abused children and received compensation for only 40 of the hours worked. Plaintiff also has common law breach of contract and intentional misrepresentation claims. All of the alleged acts took place in the Commonwealth of Massachusetts.

### Parties to the Action

1.     Christa Heinrichs (hereinafter referred to as "plaintiff" or "Heinrichs") resides in Bushkill, PA 18324. At all relevant times, plaintiff resided and worked as a houseparent at a Bridge Home operated by Concord-Assabet Family and Adolescent Services.

2    Concord Family and Youth Services, Inc. (hereinafter referred to as

"Assabet") is a non-profit corporation with a principal place of business at 380

Massachusetts Avenue, Acton, MA 01720.  Defendant, which was formerly doing

business as Concord-Assabet Family and Adolescent Services (CAFAS), operates

an enterprise of facilities and services for emotionally disturbed and/or abused

youths.

3.    Carol Litzler (hereinafter referred to as "Litzler"), the program director

at the Bridge Home, was Heinrichs' supervisor at all times relevant to this action.

4.    Rosalyn Mamlak (hereinafter referred to as "Mamlak"), at all

relevant times, served as the program manager of the Bridge Home and directly

supervised Litzler.

### Facts

5.    Assabet, which operates a number of facilities and homes for

the common business purpose of providing residential care and/or a therapeutic

milieu for emotionally disturbed and/or abused youth, who reside on the premises,

constitutes an enterprise engaged in commerce for a business purpose under 29

U.S.C. 203(r).  Its activities are "in connection with the activities of a public

agency," the Massachusetts Department of Social Services (DSS), which funds,

dictates, and regulates the services to be provided to the ultimate consumers, the

residents. 29 U.S.C. 203(r)(2)(C).  The Bridge Home, as the "front line" of foster

care, is also an institution for the care of children who have had defective

parenting, care, or protection and who may experience a wide variety of

psychological and physical defects or disorders requiring specialized and individual care.  Children who reside at the Bridge Home are ages newborn to 12 years.  Upon information and belief, Assabet competes with other residential programs to provide residential services to foster children.

6.      Assabet advertised and Heinrichs applied for a position as houseparent.

7.      Plaintiff, as the houseparent in an Assabet Bridge Home, was a covered employee in an enterprise engaged in commerce, 29 U.S.C. 207(a)(1), who was closely involved in furthering Assabet's business purpose of providing children with safe, comfortable care in a houseparent family model and in implementing Assabet's centralized policies, practices, and procedures.

8.      On or about August 18, 1999, Assabet offered and plaintiff accepted a position as houseparent with regular cash compensation at $35,000.  Both parties executed a written "wage and hour clarification" regarding plaintiff's position as a houseparent at the Bridge Home.  Under the clarification, plaintiff's regular rate of pay would be in the amount of $44,600, of which Assabet stipulated that Heinrichs' living space and utilities would be assessed at the fair market value of $9,600 for the purpose of calculating her regular rate of pay.  Plaintiff's employment agreement also provided that the time that she spent "in normal private pursuits" would not be deemed time working.  The written clarification further stated that compensation for overtime would be at one and one-half (1-1/2) times the regular rate of pay, which included the fair value of housing, utilities, and cash wages.

9.    Neither plaintiff's written and signed agreement with Assabet nor Assabet's advertisement for the position of houseparent made reference to any supervisory duties.

10.    After Heinrichs had accepted and started work, Assabet executed a letter, dated August 20, 1999, altering the title of her position to that of "House Manager" for the Bridge Home, retaining the same annualized compensation at $44,600, including $9,600 non-cash compensation for the value of housing and utilities. The letter also informed Heinrichs that Assabet personnel would discuss benefits with her, in detail, at her orientation.

11.    Assabet orally confirmed to plaintiff at her orientation that she would be paid overtime at time and a half, that she would be compensated for four (4) hours of her daily sleep time, and that she was entitled to one 8-hour shift off per week and one (1) weekend off per month.

12.    Heinrichs began work as a houseparent within the Bridge Home on August 27, 1999. She reported to the program director of the Bridge Home, Carol Litzler, and to a social worker who was on site 8 hours a day.

13.    Assabet had an elaborate and detailed "Policy, Practice and Procedure Manual" (PPPM) in place for all employees under the CAFAS corporate umbrella.

14.    Consistent with the PPPM job descriptions of houseparent, Heinrichs performed blue collar, non-exempt tasks as her primary duties. She performed a variety of maintenance and care-giving tasks, including but not limited to,

4

shopping; providing three meals a day; overseeing the taking of medications; organizing safe and structured recreational activities; transporting children to and from appointments; implementing behavioral management plans; performing housekeeping, cleaning, and maintenance chores; planning menus; documenting children's individual food in-take and medications administered; and attending off-site meetings regarding residents' respective care plans and weekly house meetings.

15.   The PPPM provision on overtime, section 16.7, mandated paying direct care/counselors/child care staff at 1-1/2 times the regular rate of pay for hours worked over 40.

16.   Plaintiff's was a direct care counselor/direct child-care staff.

17.   Throughout her employment Assabet classified and/or coded Heinrichs as a direct care counselor in its budgets and as direct-care staff in its organizational charts.

18   Other employees were coded as direct care staff supervisors.  Heinrichs was not.

19.   Assabet was subject to staff-client ratios, pursuant to its contract with DSS, to provide adequate direct-care staff coverage for the children in the Bridge Home who had been referred to DSS for negligence and/or abuse.

20.   In a memorandum dated October 1999, Heinrichs' supervisor, Carol Litzler, reconfirmed plaintiff's status as a direct-care staff person, stating that

unless Heinrichs was taking time off, she was counted as direct-care staff towards the mandated ratio, and relief staff was not required.

21.   Due to chronic staff shortages and defendant's reluctance and/or refusal to hire either temporary employees through an agency or an adequate number of relief workers, plaintiff was required on an almost daily basis to cover an absence or give assistance in the event of a physical or behavioral crisis and/or emergency. Heinrichs was required to work as a direct-care staff member from 7:00 a.m. to 11:00 p.m. throughout her employment at Assabet.  Even when older children were in school, Heinrichs was required to be working, minding a four-year old, making appointments or transporting children, or otherwise providing direct family care to the children and the Home.  Staff shortages were particularly onerous where the Home had children of both sexes in the house, as well as staff of both sexes.  The chronic staff shortages required plaintiff to stay up long after 11:00 p.m. to complete child activity and medication logs for review by social workers and/or supervisors.

22.   Except for the one 8-hour shift that Heinrichs had off per week and one weekend off per month, Heinrichs could not engage in normal private pursuits.

23.   As a result of Assabet's actual practices and procedures, as opposed to its representations to plaintiff when she was hired, plaintiff was "on duty" almost every hour of every day.  Thus, Heinrichs was not waiting to be called, but was paid to be present. 29 C.F.R. 785.17.  Virtually all of plaintiff's waking moments, as well as overnight hours in her residence, were in the

6

furtherance of the defendant's business of providing a home-like environment for

emotionally disturbed and/or abused children and constituted time for the benefit

of Assabet.

24.    Plaintiff was required to keep hourly time sheets and turn them in every

two weeks.  Heinrichs regularly recorded her time.  Her time sheets indicate that

for full weeks worked, her total hours per week ranged from 90 to 132 and

included from 43 to 92 hours of over time per week.

25.    Assabet paid plaintiff and recorded on her pay stubs only 80 hours of

work every two weeks at a regular rate of pay of $21.44 per hour ($44,600 divided

by 26 weeks divided by 80 hours per 2-week period).

26.    Contrary to Assabet's representations at the time of hire that plaintiff

would be paid for four (4) hours of her daily sleep time and would be compensated

at 1-1/2 times her regular rate of pay for overtime worked, Assabet failed to pay

Heinrichs for any of her sleep time or for any of the hours above 40, which she

worked every week of her employment.

27.    Heinrichs repeatedly complained to Litzler that she worked many, many

uncompensated hours above the 40 hours per week for which she was paid.

Litzler, in turn, instructed plaintiff to record only 80 hours of her bi-weekly hours

on her time sheets.  Litzler refused to sign plaintiff's time sheets unless the

accurate number of hours, which Heinrichs submitted, was whited-out.  When

Heinrichs complained that Assabet's records of her hours were inaccurate and

contrary to the law, Litzler said that the program manager, Rosalyn Mamlak, had

7

told Litzler that Assabet "could get into trouble with the Labor Board" because of the number of hours that Heinrichs was working.

28   Heinrichs was unable to act as a manager to schedule direct-care counsel staff who had to be approved in advance by Litzler.  Assabet caused plaintiff distress by failing to schedule adequate direct care staff, and Heinrichs expressed fear of a M.G.L. section 51A citation for child negligence against her individually or against the program.  Litzler's response was, "Don't worry, we'll give you an office job."

29.   Heinrichs gave notice, and on November 18, 1999, she terminated her employment with Assabet.  During her thirteen weeks of employment, plaintiff worked 950 hours of uncompensated overtime.

### Count I – 29 U.S.C. 207 & 215(a)(2) – Uncompensated Overtime Against All Defendants

30.   Plaintiff realleges, reaffirms, and incorporates by reference the facts and allegations contained in paragraphs 1-29.

31.   Under section 207 of the Fair Labor Standards Act and her contract of employment, Heinrichs was entitled to overtime wages of 150% of the regular rate of pay.  Plaintiff's hourly rate of pay was $21.44 ($44,600 divided by 2080 hours for the 40 hours paid per week).  Plaintiff's taxable regular rate of pay was $32.16 per hour for overtime.

32.   Defendants failed to compensate Heinrichs at 150 % of her regular pay

8

for 950 hours of overtime that she worked between August 27, 1999 and November 18, 1999. Defendants knew or should have known that plaintiff worked far in excess of 80 hours bi-weekly, and their failure to pay her was in reckless disregard of Assabet's known wage and hour obligations.

33.    Defendants' failure to pay overtime compensation to plaintiff constituted a violation of sections 207 and 215 of the Act and was unlawful.

34.    On account of defendants' violation of sections 207 and 215(a)(2) of the Fair Labor Standards Act, plaintiff suffered lost overtime compensation for 950 hours at 1.5 times $21.44 per hour for $30,552 and, pursuant to section 216(b), is entitled to liquidated damages of $30,552, as well as costs, interest, and attorneys fees.

## Count II – 29 U.S.C. 211 & 215(a)(5) – Falsified Records
### Against All Defendants

35.    Plaintiff realleges, reaffirms, and incorporates by reference the facts and allegations contained in paragraphs 1-34.

36.    As an employer subject to the provisions of the Fair Labor Standards Act, Assabet and its agents were required, pursuant to section 211 of the Act, to "make, keep, and preserve" records of plaintiff's "wages, hours, and other conditions and practices of employment." Section 215(a)(5) provides that it is unlawful to knowingly make any record with a material falsification.

37.    Defendants should have retained copies of Heinrichs hours of work at

the accurate level.  Instead, Defendants instructed plaintiff that Assabet would
only accept falsified, reduced hours on Heinrichs' time sheets.  Defendants'
instruction that Heinrichs falsify her time sheets was both material and intentional.
When plaintiff complained to defendant Litzler that the hours being recorded for
her work were inaccurate, Litzler told plaintiff that defendant Mamlak had said
that Assabet "could get into trouble with the Labor Board," if Heinrich's actual
hours were recorded.

38.   Defendants' knowing falsification of plaintiff's hours was unlawful and
in violation of sections 211 and 215(a)(5) of the Fair Labor Standards Act.

39.   On account of defendants' unlawful conduct, plaintiff suffered lost
overtime compensation in the amount of $30,552.

## Count III – Breach of Contract
### Against Concord Family and Youth Services, Inc.

40.   Plaintiff realleges, reaffirms, and incorporates by reference the facts
and allegations contained in paragraphs 1-39.

41.   Assabet orally promised Heinrichs at the time she was hired that
Assabet would pay plaintiff for four (4) hours of her daily sleep time in
compensation for her over-night availability and service as back-up staff.

42.   Assabet promised plaintiff, orally and in writing, that Heinrichs
would be compensated for her overtime work at the rate of 1-1/2 times her regular
rate of pay for a 40-hour week.

10

43.   Assabet failed to compensate plaintiff for any of her sleep-time or for any of her overtime hours.

44.   Assabet's failure to pay Heinrichs for four (4) hours of daily sleep time during her thirteen weeks of employment, beginning August 18, 1999, constituted a breach of the contract between Assabet and plaintiff.

45.   Assabet's failure to compensate plaintiff for the 950 hours of overtime that she worked during her thirteen weeks of employment, beginning August 18, 1999, constituted a breach of the contract between Assabet and Heinrichs.

46.   On account of Assabet's breach of contract, plaintiff suffered lost wages in the amount of $30,552 and is entitled interest at 12% on that amount from the date of breach, September 4, 1999, the end of the first pay period in which overtime greater than 40 hours was accrued but not paid.

### Count IV – Intentional Misrepresentation
### Against Concord Family and Youth Services, Inc.

47.   Plaintiff realleges, reaffirms, and incorporates by reference the facts and allegations contained in paragraphs 1-46.

48.   Assabet represented its pay practices to include overtime at 1-1/2 times the regular rate of pay for all overtime hours worked above 40 hours per week and 1-1/2 times the regular rate of pay for 4 hours of daily sleep time.

49.   Assabet represented that there would be adequate staff-client ratios to permit normal private pursuits beyond the 40 hours per regular work week and the paid sleep time.

50.   Assabet knew or should have known that it was not going to have direct care relief or third shift staff and that it was going to require Heinrichs to be on duty 20 hours per day.

51.   Assabet knew or should have known that it was only planning to pay plaintiff for 40 hours of work per week.

52.   Assabet represented to Heinrichs that she would be paid 1-1/2 times her regular rate of pay for all overtime worked above 40 hours per week and intentionally changed her job title to "manager" to deprive her of the benefits of the bargain while not giving her management duties and specifically prohibiting plaintiff from scheduling staff without prior approval.

53.   As a direct and proximate result of Assabet's intentional misrepresentations about plaintiff's compensation, Heinrichs lost the benefit of the bargain between the parties.

54.   As a direct and proximate result of Assabet's intentional misrepresentations regarding staff ratios, Heinrichs suffered emotional distress, exhaustion, concern for the children, and concern for herself.

Wherefore, the plaintiff demands that this Court order:

a.   That the defendants compensate plaintiff for her lost overtime wages;

b.   that the plaintiff be awarded an amount in liquidated damages equal to her lost overtime wages;

c.    that the defendant Assabet compensate plaintiff for her lost sleep-time pay and overtime wages, along with interest at 12 % from the date of its breach of contract;

d.    that the plaintiff be awarded emotional distress damages;

e.    that the defendants pay the plaintiff costs and attorney's fees resulting from this action;

f.    that the defendants pay the plaintiff interest on any judgment entered from the time of the filing of this suit; and

g.    such relief as may be just and proper and/or which will make the plaintiff whole.

**The Plaintiff requests a Jury Trial on All Issues and Causes of Action Contained in this Complaint.**

The Plaintiff,
By her Attorney

_Elizabeth A. Rodgers_
Elizabeth A. Rodgers
BBO #424360
Rodgers, Powers & Schwartz LLP
30 Federal Street
Boston, MA 02110-2508
(617) 482-7771

Heinrichs.Compl